A91A1771. STATE FARM FIRE & CASUALTY COMPANY v. GUEST.
(417 SE2d 419)

Cooper, Judge.

This interlocutory appeal arises out of an action brought by appellee to recover under the uninsured motorist provisions of an automobile insurance policy issued by appellant. Following the trial court's denial of appellant's motion for summary judgment, we granted the appeal to determine whether the "physical contact" requirement of the uninsured motorist statute was satisfied in this case.

Appellee was injured in a single-vehicle accident which occurred when appellee lost control of the car she was driving after she struck a tire assembly lying in the center lane of a highway. The car was insured under a policy which provided uninsured motorist coverage. Appellee filed a "John Doe" action against appellant alleging that the tire assembly detached from an unidentified truck whose driver negligently left the tire assembly in the middle of the highway. Appellant filed a motion for summary judgment contending that appellee was not entitled to recover because there had been no actual physical contact with an unknown motor vehicle as required by OCGA § 33-7-11 (b) (2).

OCGA § 33-7-11 (b) (2) provides: "A motor vehicle shall be deemed to be uninsured if the owner or operator of the motor vehicle is unknown . . . and, in order for the insured to recover . . . where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, *actual physical contact must have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured.* Such physical contact shall not be required if the description by the claimant of how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant." (Emphasis

supplied.)

We reject at the outset appellee's argument that under a liberal reading of the statute, physical contact between an insured vehicle and a motor vehicle part constitutes actual physical contact with a motor vehicle. "Motor vehicle" is defined in OCGA § 33-34-2 (6) as "a vehicle having more than three loadbearing wheels . . . and driven by power other than muscular power." In OCGA § 40-1-1 (33) "motor vehicle" is defined as "every vehicle which is self-propelled." We are aware of no Georgia cases which have considered the issue of whether a tire assembly constitutes a motor vehicle, and in the absence of binding authority, we must read OCGA § 33-7-11 (b) (2) "according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending [its] operation. [Cit.]" *Integon Indem. Corp. v. Canal Ins. Co..* 256 Ga. 692, 693 (353 SE2d 186) (1987). The tire assembly was neither a self-propelled vehicle nor a vehicle having more than three wheels, and even applying a liberal construction, we cannot conclude that the tire assembly was a motor vehicle within the meaning of the uninsured motorist statute.

However, our inquiry does not end here, for our conclusion that a tire assembly is not a motor vehicle does not necessarily preclude recovery where there is no direct physical contact between the unknown motor vehicle and the insured vehicle. Such an arbitrary preclusion of coverage would not be in accordance with "the intent of the legislature to create a reasonable rule which would reduce the possibility of fraudulent claims where the phantom vehicle did not cause actual physical contact, while still allowing an innocent automobile victim 'coverage for accidents caused by unknown motorists where the unknown motorist vehicle does not physically contact the insured's vehicle'. . . . [Cits.]" *Atlanta Cas. Ins. Co. v. Crews,* 197 Ga. App. 48 (3) (397 SE2d 466) (1990). We have found sufficient physical contact under the statute where an unknown vehicle strikes an intervening vehicle which then strikes the claimant's vehicle. See *State Farm &c. Ins. Co. v. Carlson,* 130 Ga. App. 27 (1) (202 SE2d 213) (1973). *Carlson,* however, was decided under a previous version of OCGA § 33-7-11 (b) (2), which did not include the exception to the physical contact requirement providing for the corroboration by an eyewitness of the claimant's description of how the accident occurred. The corroboration exception has been interpreted as imposing two requirements for recovery. First, the claimant's description must include a claim that the accident was caused by an unknown vehicle and second, the corroboration must also implicate the unknown vehicle. *Hoffman v. Doe,* 191 Ga. App. 319, 320-321 (381 SE2d 546) (1989). This court has held that the exception to the physical contact requirement has not been met where the claimant did not see the unknown vehicle even though

an eyewitness to the accident saw the unknown vehicle (see *Bell v. Coronet Ins. Co.,* 197 Ga. App. 211 (1) (398 SE2d 242) (1990)), and where the eyewitness could not corroborate, except by conjecture, the claimant's contention that the accident was caused by an unknown vehicle. See *National Surety Corp. v. O'Dell,* 195 Ga. App. 374, 375 (393 SE2d 504) (1990). In a recent case decided by this court, the claimant contended that an unknown vehicle dropped a cardboard box which then caused another vehicle to strike claimant's vehicle. We held that there could be no recovery because no one saw the box drop from the truck, therefore there were no eyewitnesses to corroborate the claimant's description of the occurrence. See *Scott v. Allstate Ins. Co.,* 200 Ga. App. 296 (407 SE2d 492) (1991).

Several jurisdictions with statutes comparable to OCGA § 33-7-11 (b) (2) have, in cases where there was no direct physical contact between the unknown vehicle and the insured vehicle, allowed recovery under what is known as the "indirect physical contact" doctrine. For example, where an object in the roadway is propelled into the insured's vehicle by an unknown vehicle, courts have allowed recovery, reasoning that a substantial physical nexus exists between the unknown vehicle and the insured vehicle. See *Southern Farm Bureau &c. Ins. Co. v. Brewer,* 507 S2d 369 (Miss. 1987); *Allied Fidelity Ins. Co. v. Lamb,* 361 NE2d 174 (Ind. Ct. App. 1977). We are aware of no Georgia cases which have utilized the "indirect physical contact" doctrine or which have determined the question presented by this case of whether the collision with a motor vehicle component lying in the highway constitutes physical contact under OCGA § 33-7-11 (b) (2). However, we have discovered two cases from other jurisdictions which involved almost identical facts to those in this case. In *Blankenbaker v. Great Central Ins. Co.,* 281 NE2d 496 (Ind. Ct. App. 1972), the driver of a camper was injured in a single vehicle accident when he struck a tire assembly lying in his lane of travel on the highway. The court, after concluding as a matter of law that there was no direct physical contact with an automobile because the tire assembly was not an automobile, considered the question of whether there was "indirect physical contact" with an automobile. The court rejected the "indirect physical contact" doctrine finding that there was a "total lack of evidence tending to establish a causal connection between *some* vehicle and this tire and rim assembly." *Blankenbaker,* supra at 501-502. The court also concluded that a showing that the assembly was part of a hit-and-run vehicle was required to invoke the indirect physical contact doctrine. However, in *Adams v. Mr. Zajac,* 313 NW2d 347 (Mich. Ct. App. 1981), the driver of a car was killed when he lost control of his car after striking or swerving to avoid a tire assembly lying in the highway. The court held that physical contact occurs "when a vehicle or an *integral part of it* comes into physical

contact with another vehicle." (Emphasis supplied.) *Adams,* supra at 349. The court further held the inference drawn from the contact with the tire assembly should be weighed by the trier of fact to determine whether another vehicle was actually involved. *Adams,* supra at 350. Although we are not bound by either case we find the *Adams* case is more consistent with the intent of our legislature to "create a reasonable rule which would reduce the possibility of fraudulent claims. . . ." *Atlanta Cas. Ins. Co. v. Crews,* supra at 50.

The undisputed facts in this case show that appellee's car collided with a tire assembly which was in the middle of the highway; that at the time of the collision the tire assembly was not attached to any specific motor vehicle; and that no one, including appellee, saw the tire assembly detach from any motor vehicle. " 'The cardinal rule of the summary (judgment) procedure is that the court can neither resolve facts nor reconcile the issues but only look to ascertain if there is an issue. (Cit.)' [Cit.] ' "(T)he party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence." ' [Cit.]" *Powell v. Ferreira,* 198 Ga. App. 465 (402 SE2d 85) (1991). We find that a reasonable inference to be drawn from appellee's collision with a tire assembly — an integral part of a motor vehicle — is that the tire assembly was negligently attached to an unknown vehicle from which it fell and left in the roadway by the driver of that unknown vehicle. See *J. C. Penney Cas. Ins. Co. v. Woodard,* 190 Ga. App. 727 (4) (380 SE2d 282) (1989). That inference, as well as any other inference, is circumstantial evidence which the jury must consider along with all of the other evidence to be weighed in its determination of where the preponderance of the evidence lies on the issue of whether an unknown motor vehicle caused the accident. *Macon Coca-Cola Bottling Co. v. Chancey,* 216 Ga. 61 (3) (114 SE2d 517) (1960). Accordingly, we hold that under the facts of this case, the trial court did not err in denying appellant's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., concurs. Pope, J., concurs specially.*

Pope, Judge, concurring specially.

I do not concur in the holding that a collision with a component part of an automobile can never, as a matter of law, be a collision with a motor vehicle within the meaning of the Georgia uninsured motorist statute. Pursuant to the Georgia uninsured motorist statute, the plaintiff may recover uninsured motorist benefits in this case either by showing that she actually collided with an unknown vehicle or by providing a description of how the accident was caused by an unknown vehicle, which is corroborated by the testimony of an eyewitness. See OCGA § 33-7-11 (b) (2). In this case, it is not necessary to

conclude whether the plaintiff actually collided with an unknown vehicle when she collided with the tire and rim assembly lying in the roadway. Instead, the plaintiff/claimant alleges that the accident was caused by a rim and tire assembly and that her description of the accident is supported by three eyewitnesses. Thus, the defendant is not entitled to summary judgment on the ground that the plaintiff did not have actual physical impact with an unknown vehicle. She may recover under the corroborated description alternative of the uninsured motorist statute.

In this case, neither the claimant nor the eyewitnesses will be able to describe the existence of an unknown vehicle. Nevertheless, their description at least includes, by implication from the circumstances, the existence of an unknown vehicle. Cf. *Hoffman v. Doe,* 191 Ga. App. 319 (381 SE2d 546) (1989) (in which the claimant was not able to give a description of the accident which implied a phantom vehicle). The issue, then, is whether the existence of a phantom vehicle, under the particular circumstances of this case, may be supplied by circumstantial evidence and implication. I agree that pursuant to this court's holding in *J. C. Penney Cas. Ins. Co. v. Woodard,* 190 Ga. App. 727 (380 SE2d 282) (1989) the existence of a phantom vehicle may be established by the circumstances, opinion testimony and from "the jury's common sense. . . ."

The defendant in this case is not entitled to summary judgment because it has not pierced the allegation that the accident was caused by an unknown vehicle. The defendant has presented no evidence of how the tire assembly came to be in the roadway, but merely stated that it could have arrived there by any means, including the intentional act of a miscreant. But this argument was rejected in *Woodard,* in which we concluded: "If appellant contends, as it obviously does, that the [component part of a vehicle] might have come from *anywhere,* then it must concede the possibility and, according to the witnesses, the likelihood, that it fell from a [vehicle] after being fastened insecurely." Id. at 731. Here, the plaintiff has not yet offered any testimony or other evidence to support its allegation that the tire assembly came from a motor vehicle. But the party opposing a motion is under no duty to present evidence in opposition to the motion until the moving party has produced evidence demanding a judgment. *Horton v. Wombles,* 182 Ga. App. 214 (2) (355 SE2d 124) (1987); *Peoples Bank &c. v. Austin,* 159 Ga. App. 223 (2) (283 SE2d 81) (1987). Just as the trial evidence in *Woodard* did not demand a verdict that the component part which caused the accident had not originated from a motor vehicle, likewise in this case the record does not demand a judgment that the tire assembly did not originate from a motor vehicle, as the plaintiff alleges. A jury issue is presented concerning whether the tire assembly fell off a motor vehicle or came to be in the

road by any other means.

DECIDED MARCH 19, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992 —

Blasingame, Burch, Garrard & Bryant, Andrew J. Hill III, Gregory A. Daniels, for appellant.
Scott & Quarterman, Howard T. Scott, Donald T. Wells, Jr., for appellee.